TALIAFERRO, Judge
(dissenting).
I have studied the record in this case closely and find myself unable to agree with the final conclusion of the majority that plaintiff made out a case entitling him to compensation for admittedly disabling injuries.
*269 I hesitate, to some extent, to register a dissent in the case, since it turns upon issues of fact, but being firmly convinced that plaintiff, when injured, was not in the course of his employer’s business, feel impelled to do so and to submit brief reasons therefor.
Plaintiff plants his case upon two propositions, which, it is argued, warrant judgment in his favor, to-wit:
(1) That he drove his employer’s truck to Tioga, some twelve miles distant, to see Mr. Raymond Griffin, who lived there, to learn from him if he had been able to contact a prospect to fill the place of Willie Gray, defendant’s edgerman, who, he says, had expressed a determination to resign his position on January first, some thirty-three days threafter;
(2) To pick up a bolt needed to repair some part of the sawmill, which he had a week prior, seen lying on the ground in Griffin’s yard.
The first proposition falls flat when the true facts are adequately weighed. The edgerman, Gray, at no time stated to plaintiff or to anyone else, that he intended to resign his position on January first. He so testified and his testimony is corroborated by a fellow workman, LaCroix, a witness for plaintiff, who says that Gray only expressed his preference to work in the woods where some new machinery was being used to handle timber and logs. The weight of this testimony clearly establishes a lack of necessity for the procurement of a man to take the place of Gray.
Plaintiff’s position in this respect is further exploded when it is shown that Gray never quit the job as edgerman, but, on the contrary, served continuously in that capacity until the day of trial in September, 1950, nearly one year after the accident. And, in addition, it would seem most unusual for plaintiff to be so concerned over a successor to Gray, even.if he had intended to resign, as plaintiff contends, because the day of such resignation was over a month ahead, and so far as appears, no necessity for haste was present.
The second proposition smacks of the fantastic when it is recalled that plaintiff drove so far to get a bolt that he had a week prior observed, abandoned, in the yard of his friend, Griffin. In this instance the facts should be most carefully weighed and studied.
Plaintiff testified, and it may be conceded, that his duties required that he keep the mill constantly in running order, and hence his solicitude to procure the bolt that day, the day of the accident. He testified that he was expressly directed by Mr. Lewis, member of the employer firm, to make sure that the mill was in first-rate running order for the following Monday morning, and further that the feed works, or the gear wheels, of the mill were torn out; that he was repairing these impaired parts, tightening the bolts, etc., to comply with Mr. Lewis’ directions. . He says he needed the bolt for “my feed works”.
It stands to reason that the bolt was not needed for the repair work and that when plaintiff drove off in the truck, the repair work on the sawmill had been completed by him. This conclusion is inescapable when it is recalled that on Monday morning the mill was set in operation as usual and functioned efficiently without the aid of plaintiff or the bolt.
As to proposition (1), plaintiff has been clearly discredited by Gray and his own witness, LaCroix, and by reason and pertinent circumstances. This being true, his testimony and position concerning the bolt should be scanned with scorching scrutiny, remembering that it devolved upon him to establish that when injured he was acting in the course of his employment. If he is wrong in one instance, he is wrong in both.
As I view the case, it resolves itself simply into this: . After plaintiff completed the work at the mill, he. decided to visit some in his employer’s truck, and on the return trip, was injured. He seeks to have his employer and its insurer compensate him for the injuries received while on a mission purely his own. ■ .